**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHARLYN ADKINS, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | |
| SUPERFOODS, INC. d/b/a LIVE IT UP | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Charlyn Adkins ("Plaintiff"), on behalf of herself and all others similarly situated (the "Class," as defined below), brings this Class Action Complaint against Defendant Superfoods, Inc. d/b/a Live it Up ("Superfoods" or "Defendant"). Plaintiff bases these allegations on personal knowledge as to matters related to and known to her. As to all other matters, Plaintiff bases her allegations on information and belief and through investigation of her counsel. Plaintiff believes substantial evidentiary support exists for the allegations below.

**NATURE OF THE ACTION**

1.      Superfoods is a manufacturer of dietary supplements.

2.      Plaintiff brings this case on behalf of herself and all other consumers nationwide who bought Defendant's dietary supplement products that were recently recalled by Defendant in conjunction with the U.S. Food and Drug Administration due to potential *Salmonella* contamination.  *Salmonella* can cause consumers to become sick and can result in serious illness.

3.      Defendant manufactures, warrants, advertises, markets, distributes, and sells Live it Up Super Greens, including both Original and Wild Berry flavors. Defendant uniformly misrepresented,

among other things, that its Recalled Products (defined below) contain "the highest quality ingredients," "all the good stuff," "none of the bad stuff," and that Defendant utilized "good manufacturing practices."

4.      On January 15, 2026, Defendant announced a recall of all Live it Up Super Greens with lots beginning with the letter "A" and all stick pack products due to possible contamination with *Salmonella*. The recall includes the following products: Live it Up Super Greens, NET WT 8.5oz (240g) with UPC 860013190804; Live it Up Super Greens, 30 – 0.28oz (8g) sticks, NET WT. 8.47oz (240g) with UPC 850077468063; Live it Up Super Greens, Wild Berry, NET WT 9.49oz (269.16g), with UPC 860013190811; and Live it Up Super Greens, Wild Berry, 30 – 0.32oz (9g) Sticks, NET WT. 9.52oz (270g), with UPC 850077468070 (collectively, the "Recalled Products").

5.      On or about January 20, 2026, the Food and Drug Administration ("FDA") published news about Defendant's recall.[1]  To date, there have been 45 illnesses and 12 hospitalizations across the United States due to *Salmonella* contamination that are possibly linked to the Recalled Products.

6.      The Recalled Products were sold to consumers located nationwide in the United States, including Puerto Rico, Guam, and Virgin Islands. Products were sold through Defendant's direct-to-consumer website since September 2024 and on Amazon.com since July 30, 2025. There may also be unauthorized 3rd party distribution to consumers through ebay.com, Walmart.com, or other sites. The Recalled Products have expiration dates from 08/2026 to 01/2028.[2]

7.      Defendant marketed and advertised the Recalled Products as being fit or suitable for human consumption.  As alleged herein, Defendant's marketing and advertising of the Recalled Products is false, deceptive, and misleading to reasonable consumers because the Recalled Products were contaminated with *Salmonella*, and thus were not as advertised, represented, or guaranteed.

---

[1]      https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/superfoods-inc-dba-live-it-recalls-live-it-super-greens-because-possible-health-risk (last visited Jan. 30, 2026).
[2]      *Id*.

8.     Plaintiff and Class members would not have purchased the Recalled Products had they known the products contained, or might have contained, dangerous or toxic levels of *Salmonella* and/or that Defendant did not adequately test, screen, and/or inspect the Recalled Products before selling them.

9.     Accordingly, Plaintiff brings this action and assert claims on behalf of herself and all other similarly situated persons (defined below) for negligence, negligent misrepresentation, breach of express and implied warranties, fraudulent concealment, violation of relevant state consumer protection acts, strict product liability, and unjust enrichment.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million (exclusive of interests and costs), the number of members of the proposed Class exceeds 100, and many members of the proposed Class are citizens of different states than Defendant.

11.     This Court has general personal jurisdiction over Defendant because Defendant's corporate headquarters and principal place of business is located at 228 Park Avenue, S Unit 45397, New York, NY 10003.

12.     Venue is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims  and the Class' claims occurred in this District.

## PARTIES

13.     Plaintiff Charlyn Adkins is a citizen of the state Missouri and a resident of Morgan County, Missouri.

14.     Defendant Superfoods, Inc. d/b/a Live it Up is a for-profit company incorporated in the State of Delaware, with its headquarters and principal place of business located at 228 Park Ave S Unit 45397, New York, NY 10003.

3

## FACTUAL ALLEGATIONS

***Dietary Supplements Contaminated with Salmonella are Dangerous***

15.     *Salmonella* is a group of bacteria that can cause foodborne illness or salmonellosis.

16.     The FDA warns that *Salmonella* can cause serious and sometimes fatal infections in young children, frail or elderly people, and others with weakened immune systems. Healthy persons infected with *Salmonella* often experience fever, diarrhea (which may be bloody), nausea, vomiting and abdominal pain. In rare circumstances, infection with *Salmonella* can result in the organism getting into the bloodstream and producing more severe illnesses such as arterial infections (i.e., infected aneurysms), endocarditis and arthritis.."[3]

17.     The CDC estimates that *Salmonella* causes approximately 1.35 million illnesses, 26,500 hospitalizations, and 420 deaths in the United States each year. Salmonellosis is the second leading cause of foodborne illnesses in the U.S., after norovirus, but is the leading cause of hospitalizations and deaths from food poisoning.[4]

18.     Due to this known risk and danger of *Salmonella*, manufacturers should have in place or implement quality and preventive control standards and practices to prevent sourcing of and use of ingredients contaminated with *Salmonella* in foods and dietary supplements.

***Plaintiff Adkins' Experience with Products***

19.     Beginning on or around July 2025, Plaintiff Adkins purchased the Recalled Product. Following her initial purchases, Plaintiff purchased the Recalled Product through Defendant's monthly subscription program.

20.     In deciding to make her purchases of the Recalled Products, Plaintiff Adkins relied on the representations on the Products' packaging regarding the Products' ingredients, benefits, and

---

[3] *Id.*

[4] https://www.fda.gov/animal-veterinary/animal-health-literacy/get-facts-about-salmonella (last visited January 30, 2026)

healthfulness:





21.    Nowhere on the Recalled Product packaging did Defendant disclose that the Recalled

Products contained or may contain *Salmonella*.

22.     On or about, December 18, 2025, Plaintiff Adkins was rushed by ambulance to the emergency room at Lake Regional Hospital with severe stomach cramps consistent with *Salmonella* poisoning. Plaintiff Adkins incurred thousands of dollars in medical bills as a result of her illness caused by the Recalled Products.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action pursuant to Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure on behalf of the following proposed class: All persons residing in the United States who purchased one or more Recalled Products subject to the January 15, 2026 recall ("Nationwide Class").[5]

24.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest, anyone who purchased Recalled Product for re-sale, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

25.     This action is brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

### Numerosity of the Proposed Class

### (Fed. R. Civ. P. 23(a)(1))

26.     The members of the Class are so numerous that their individual joinder would be impracticable. Upon information and believe, the Class comprises at least thousands of consumers. The precise number of Class members, and their addresses, are unknown to Plaintiff at this time, but can be ascertained from Defendant's records and/or retailer records, including Amazon. The members of the Class may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary

---

[5] Plaintiff reserves the right to amend this Nationwide Class definition as this litigation progresses.

or appropriate by the Court) by publication notice and/or a digital notice campaign.

## Predominance of Common Questions of Fact and Law

## (Fed. R. Civ. P. 23(a)(2); 23(b)(3))

27.     Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members of the Class.  The common legal and factual questions include, without limitation:

a.  Whether Defendant knew or should have known that the Recalled Products were contaminated with *Salmonella* that rendered the Recalled Products unsafe and unsuitable for consumption and human handling;

b.  Whether Defendant failed to employ quality control measures and/or best manufacturing practices and failed to properly source, manufacture, test and/or inspect its Recalled Products before distribution and sale;

c.  The date on which Defendant learned or should have learned of *Salmonella* contamination in its Recalled Products;

d.  Whether Defendant made affirmative misrepresentations and/or false and misleading statements regarding the Recalled Products;

e.  Whether Defendant failed to disclose material facts regarding the Recalled Products;

f.  Whether Defendant was negligent in producing the Recalled Products;

g.  Whether Defendant made negligent misrepresentations in connection with the distribution and sale of the Recalled Products;

h.  Whether Defendant breached express warranties in connection with the distribution and sale of the Recalled Products;

i.  Whether Defendant breached the implied warranty of merchantability in connection with the distribution and sale of the Recalled Products;

j.  Whether Defendant violated the New York state consumer protection statute alleged herein;

k.  Whether Defendant was unjustly enriched;

l.  The nature of the relief, including damages and equitable relief, to which Plaintiff and the members of the Class are entitled; and

m.  Whether Defendant is liable for Plaintiff's attorneys' fees and costs.

## Typicality of Claims

## (Fed. R. Civ. P. 23(a)(3))

28.  Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all other Class members, purchased Defendant's Recalled Products, suffered damages as a result of those purchases, and seek the same types of relief as the proposed Class members.

## Adequacy of Representation

## (Fed. R. Civ. P. 23(a)(4))

29.  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class and she has retained counsel competent and experienced in complex class actions, including consumer litigation and food contamination litigation.

30.  Plaintiff and her counsel will fairly and adequately protect the interest of the members of the Class.

## Superiority of a Class Action

## (Fed. R. Civ. P. 23(b)(3))

31.  A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and members of the Class. There is no special interest in Class members individually controlling the prosecution of separate actions. The damages suffered by individual members of the Class, while significant, are relatively small given the burden and expense of individual

prosecution of the complex and extensive litigation necessitated by Defendant's conduct. And, even if members of the Class themselves could afford such individual litigation; the court system could not, given the thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of

### Final Injunctive or Declaratory Relief

### (Fed. R. Civ. P. 23(b)(1) and (2))

32.     In the alternative, this action may properly be maintained as a class action, because:

   a.  the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

   b.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

   c.  Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

### Issue Certification

### (Fed. R. Civ. P. 23(c)(4))

33.     In the alternative, the common questions of fact and law, set forth in Paragraph 28, are

appropriate for issue certification on behalf of the proposed Class.

## FIRST CAUSE OF ACTION

### Negligence

### (On Behalf of the Nationwide Class)

34.    Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

35.    Defendant owed a duty of care to Plaintiff and the Class members. Defendant breached that duty.

36.    Defendant is the manufacturer of the Recalled Products purchased by Plaintiff and Class members.

37.    Defendant had a duty to take reasonable care in the manufacture, formulation, sourcing, testing, inspection, marketing, distribution, and the sale of its Recalled Product.  Defendant also had a duty to identify, recall, and remove contaminated Recalled Products prior to offering it for sale.  And, Defendant had a duty to immediately remove the Recalled Products from the marketplace and take all appropriate remedial actions.

38.    By the actions and omissions alleged herein, Defendant breached these duties. Among other things, Defendant manufactured products contaminated with *Salmonella* that rendered its Recalled Products unsafe and unsuitable for consumption and human handling.

39.    As a result of Defendant's breaches and violations, Plaintiff and Class members suffered harm and were damaged.

40.    Defendant's negligence was a substantial factor in the harm and damages caused to Plaintiff and Class members.

41.    At all relevant times, Plaintiff and members of the Class acted lawfully and with due care and did not contribute to their injuries.

10

42.    Accordingly, Plaintiff and members of the Class are entitled to damages and other appropriate relief, as prayed for hereunder.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

### (On Behalf of the Nationwide Class)

43.    Plaintiff hereby incorporates all other paragraphs of this Complaint and restate them as if fully set forth herein.

44.    Defendant's actions and omissions alleged herein constitute negligent misrepresentation.

45.    Defendant misrepresented material facts concerning the safety, suitability, and quality of its Recalled Products.  These misrepresentations included, but are not limited to, the following:

    a.   The Recalled Products contained "all the good stuff"[6]

    b.   The Recalled Products contained "none of the bad stuff"[7]

    c.   The Recalled Products contained the "Highest quality ingredients"[8]

    d.   The Recalled Products are manufactured using "good manufacturing practices"[9]

    e.   The Recalled Products were nutritious, healthful, and suitable for consumption.

46.    Defendant has no reasonable grounds for believing that its representations were true. Defendant knew or should have known, but failed to disclose that, contrary to its representations, the Products were or could be contaminated with *Salmonella* that could (and did) cause injury to humans, such as vomiting, diarrhea, fever, loss of appetite, lethargy, severe abdominal pain, or can lead to serious health issues including death.

47.    Defendant made such misrepresentations with the intent to induce Plaintiff and Class

---

[6] https://letsliveitup.com/products/supergreens (last visited January 31, 2026)
[7] Id.
[8] Id.
[9] Id.

members to rely on its misrepresentations and purchase Recalled Products.

48.     Plaintiff and Class members had no knowledge of the falsity of Defendant's representations and reasonably believed them to be true. In justified reliance on Defendant's misrepresentations, Plaintiff and Class members purchased and consumed the Recalled Products.

49.     As a direct and proximate consequence, Plaintiff and Class members suffered harm and were damaged. Among other things, Plaintiff and others suffered severe pain and discomfort and incurred thousands of dollars in medical expenses.  Further, Plaintiff and Class members would not have purchased Defendant's Recalled Products, or would have paid less had they known of the presence, or the potential presence, of dangerous levels of *Salmonella*.

50.     Plaintiff and Class members are therefore entitled to damages and relief, as prayed for hereunder.

## THIRD CAUSE OF ACTION

### Breach of Express Warranty

### (On Behalf of the Nationwide Class)

51.     Plaintiff hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

52.     Defendant marketed and sold the Recalled Products into the stream of commerce with the intent that the Products would be purchased by Plaintiff and members of the Class.

53.     Defendant expressly warranted, advertised, and represented to Plaintiff and members of the Class that the Recalled Products were and are high quality, healthy, safe, and suitable for consumption.  The express warranties included, but are not limited to, the following:

    a.  The Recalled Products contained "all the good stuff"[10]

---

[10] https://letsliveitup.com/products/supergreens (last visited January 31, 2026)

b.  The Recalled Products contained "none of the bad stuff" [11]

c.  The Recalled Products contained the "Highest quality ingredients" [12]

d.  The Recalled Products are manufactured using "good manufacturing practices"[13]

e.  The Recalled Products were nutritious, healthful, and suitable for consumption.

54.    Defendant made these express warranties regarding the Recalled Products' quality, ingredients, manufacturing, and suitability for consumption in writing through its website, advertisements, and marketing materials and on the Recalled Products' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiff and members of the Class entered into upon purchasing the Recalled Products.

55.    Defendant's warranties, advertisements, and representations were uniformly made in connection with the sale of the Recalled Products to Plaintiff and members of the Class. Plaintiff and members of the Class relied on Defendant's warranties, advertisements, and representations in deciding whether or not to purchase Defendant's Recalled Products.

56.    Defendant's Recalled Products do not conform to Defendant's warranties, advertisements, and representations in that they are not safe or appropriate for consumption, as they are contaminated with or potentially contaminated with *Salmonella*.

57.    Defendant was on notice of this breach, as Defendant was aware of the dangerous *Salmonella* contamination in the Recalled Products due to its own testing and expertise, and/or based on testing conducting by various third parties as alleged herein that revealed the Recalled Products to be contaminated with Salmonella.

58.    Upon information and belief, Defendant failed to timely remove and recall the Recalled Products once it became aware of the *Salmonella* contamination, necessitating punitive damages.

---

[11] Id.
[12] Id.
[13] Id.

13

59.     Affording Defendant a reasonable opportunity to cure its breach of express warranties would be unnecessary and futile here because Defendant had knowledge of and concealed the safety issues of its Recalled Products.

60.     Privity exists because Defendant expressly warranted to Plaintiff and members of the Class through the warranting, website, packaging, advertising, marketing, and labeling that the Recalled Products were high quality, safely manufactured, healthy, safe, and suitable for consumption, and by failing to make any mention of dangerous levels of *Salmonella* contamination.

61.     As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class suffered severe pain and discomfort and incurred thousands of dollars in medical expenses and other related losses.  Plaintiff and members of the Class also suffered actual damages in that they purchased Recalled Products that were worth less than the price they paid and they would not have purchased the Recalled Products had they known of the risk and/or presence of dangerous levels of Salmonella contamination that do not conform to the Recalled Products' marketing and advertisements.

62.     Plaintiff and members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FOURTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

### (On Behalf of the Nationwide Class)

63.     Plaintiff hereby incorporates all other paragraphs of this Complaint and restate them as if fully set forth herein.

64.     At all relevant times, Defendant was the merchant, manufacturer, marketer, warrantor, and/or seller of the Recalled Products. Defendant knew or had reason to know of the specific use for which the Recalled Products were purchased.

65.     Plaintiff and Class members purchased the Recalled Products manufactured and marketed

14

by Defendant at retailers and online retailers for retail sale to consumers throughout the United States.

66.    Recalled Products are and were at all relevant times "goods" within the meaning of various state statutes set forth herein.

67.    An implied warranty that the Products were merchantable arose by operation of law as part of the sale of the Recalled Products.

68.    Defendant impliedly warranted to Plaintiff and the Class that the Recalled Products were of merchantable quality, fit for their ordinary use, and conformed to the messaging, characterizations, promises, and affirmations of fact made on the Recalled Products' packaging, labels, and/or advertisements, including that the food was high quality, healthy, safe, and suitable for consumption. The Products when sold at all times were not in merchantable condition and were and are not fit for the ordinary purpose of a dietary supplement. The Recalled Products were and are not safe because they contain or at risk of containing dangerous levels of *Salmonella*.

69.    Plaintiff and members of the Class relied on such messaging, characterizations, promises, and affirmations of fact when they purchased the Recalled Products. Contrary to Defendant's representations and warranties, the Recalled Products were not fit for their ordinary use - consumption - and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, dangerous levels of *Salmonella* contamination that do not conform to the packaging.

70.    As a consequence, Defendant breached its implied warranties by selling the Recalled Products.

71.    Defendant cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous Recalled Products.

72.    Defendant was on notice of this breach, as Defendant was aware of the *Salmonella* contamination in the Recalled Products due to its own testing and expertise, and/or based on testing conducting by various third parties as alleged herein that revealed the Recalled Products were

15

contaminated with Salmonella or were at risk of such contamination.

73.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and members of the Class have been damaged in an amount to be proven at trial.

74.     Plaintiff and members of the Class have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

75.     Privity exists because Defendant impliedly warranted to Plaintiff and members of the Class through the website, packaging, advertising, marketing, and labeling that the Recalled Products were high quality, safely manufactured, healthy, safe, and suitable for consumption, and by failing to make any mention of *Salmonella* contamination.

76.     Nonetheless, privity is not required here because Plaintiff and each Class member are intended third-party beneficiaries of contracts between Defendant and its distributors and non-consumer buyers, and of their implied warranties. The distributors, including Amazon, were not intended to be the ultimate consumers of the Recalled Products and have no rights under the warranties of the Recalled Products; the warranties were designed for and intended to benefit consumers only, including Plaintiff and the Class members.

77.     As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class have suffered actual damages in that they have purchased Products that are worth less than the price they paid and that they would not have purchased at all had they known the presence or risk of Salmonella contamination. Further, Plaintiff and members of the Class suffered severe pain and discomfort and incurred thousands of dollars in medical expenses and other related losses.

78.     Plaintiff and members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## FIFTH CAUSE OF ACTION

### Fraudulent Concealment - Fraud by Omission

### (On Behalf of the Nationwide Class)

79.     Plaintiff hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

80.     Defendant concealed from and failed to disclose and/or to timely disclose to Plaintiff and members of the Class that the Recalled Products were contaminated with *Salmonella* and do not conform to the Recalled Products' labels, packaging, advertising, and statements, including, but not limited to, representations that they were high quality, safely manufactured, healthy, safe, and suitable for consumption.

81.     Defendant was under a duty to disclose to Plaintiff and members of the Class the true quality, characteristics, ingredients and suitability of the Recalled Products because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Recalled Products for consumption; (3) Defendant had exclusive knowledge of its own test results showing dangerous levels of *Salmonella* contamination in its Products; and/or (4) Defendant knew that Plaintiff and members of the Class could not reasonably have been expected to learn or discover that the Recalled Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Products.

82.     The facts concealed or not disclosed or not timely disclosed once *Salmonella* was detected by Defendant to Plaintiff and members of the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Recalled Products. No reasonable consumer would have purchased Recalled Product had Defendant adequately, timely, and fully disclosed the truth.

83.    Defendant knew that this omission was material information that Plaintiff and members of the Class, and Defendant intentionally omitted and failed to disclose this information to induce the Plaintiff and members of the Class to purchase its Recalled Products.

84.    Plaintiff and members of the Class did not know or suspect that Defendant's Recalled Products were unsafe or contained unhealthy ingredients.

85.    Plaintiff and members of the Class justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Recalled Products, which are inferior when compared to how the Recalled Products are advertised and represented by Defendant.

86.    As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class have suffered actual damages in that they purchased the Products that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of dangerous levels of Salmonella contamination that do not conform to the products' labels, packaging, advertising, and statements. Further, Plaintiff and members of the Class suffered severe pain and discomfort and incurred thousands of dollars in medical expenses and other related losses.

87.    Plaintiff and members of the Class seek actual and punitive damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

### (On Behalf of the Nationwide Class)

88.    Plaintiff hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

89.    Plaintiff and members of the Class conferred a benefit upon Defendant. Plaintiff and members of the Class paid money for Defendant's Recalled Products that were not as represented; they

were not suitable for consumption and/or they did not meet Defendant's guarantees promising "all the good stuff," "none of the bad stuff", and the "Highest quality ingredients."

90.     Defendant have unjustly retained the benefits conferred upon them by Plaintiff and Class members.

91.     Defendant retained that benefit under circumstances that make it inequitable for it to retain such benefit. Specifically, Defendant retained that benefit even though its Recalled Products contain or may contain *Salmonella* that renders the Recalled Products unsafe and unsuitable for consumption and human handling.  If Plaintiff and Class members had known the true nature of the Recalled Products, they would not have paid money for them or would have paid less.

92.     Plaintiff and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF NEW YORK GBL § 349

## (On Behalf of the Nationwide Class)

93.     Plaintiff incorporates by reference each and every allegation set forth above as if fully written herein.

94.     Plaintiff brings this claim on behalf of the Nationwide Class.

95.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

96.     The uniform conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the other Class members seek monetary damages against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting the Recalled Products.

97.  Defendant misleadingly, inaccurately, and deceptively advertised and marketeds its Recalled Products to consumers nationwide.

98.  Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Salmonella* and affirmatively misrepresenting the qualities of the Recalled Product as containing "all the good stuff" and "none of the bad stuff", and the "Highest quality ingredients" —is misleading in a material way in that it, inter alia, induced Plaintiff and the Class members to purchase Recalled Products and to use the Recalled Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

99.  Plaintiff and the Class members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the Class members received less than what they bargained and paid for.

100.  Defendant's advertising and Recalled Products' packaging and labeling induced Plaintiff and the Classs members to buy Defendant's Recalled Products.

101.  Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class members have been damaged thereby.

102.  As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF NEW YORK GBL § 350**

**(On Behalf of the Nationwide Class)**

20

103.    Plaintiff incorporates by reference each and every allegation set forth above as if fully written herein.

104.    Plaintiff brings this claim on behalf of the Nationwide Class.

105.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

106.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

107.    Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Recalled Products inasmuch as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Salmonella*.  In addition, Defendant's labeling and advertisements contain untrue and materially misleading statements such as the Recalled Product contains "all the good stuff," "none of the bad stuff," and "Highest quality ingredients."

108.    Plaintiff and the Class members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the Class members received less than what they bargained and paid for.

109.    Defendant's advertising, packaging, and Recalled Products' labeling induced Plaintiff and the other Class members to buy Defendant's Recalled Products.

110.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

111.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

112.    Defendant made the material misrepresentations described in this Complaint in its advertising and on the Recalled Products' packaging and labeling.

113.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Recalled Products were and continue to be exposed to Defendant's material misrepresentations.

114.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and the proposed Class, pray for relief and judgment against Defendant as follows:

A.    Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representatives of the Class, and designating Plaintiff's counsel as Class Counsel;

B.    Awarding Plaintiff and the Class compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

C.    Awarding Plaintiff and the Class appropriate relief, including actual damages, punitive damages, compensatory damages and all other appropriate forms of damage;

D.    For declaratory and equitable relief, including restitution and disgorgement;

E.    For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

F.    Awarding Plaintiff and the Class the costs of prosecuting this action, including expert witness fees;

G.    Awarding Plaintiff and the Class reasonable attorneys' fees and costs as allowable by law;

H.    Awarding statutory damages as allowable by law;

I.    Awarding pre-judgment and post-judgment interest; and

J.    Granting any other relief as this Court may deem just and proper

## JURY TRIAL DEMANDED

Plaintiff hereby demand a trial by jury on all issues so triable.

Dated: February 2, 2026

*/s/ Jason P. Sultzer*

**SULTZER & LIPARI, PLLC**
Jason P. Sultzer, Esq.
Jeremy Francis, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

Jeffrey S. Goldenberg*
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Tel: 513-345-8297
Fax: 513-345-8294
jgoldenberg@gs-legal.com

Charles E. Schaffer*
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
Fax: 215-592-4663
cschaffer@lfsblaw.com

Joseph M. Lyon*
**THE LYON FIRM**
2754 Erie Ave.
Cincinnati, Ohio 45208
Tel: (513) 381-2333
Fax: (513) 766-9011
jlyon@thelyonfirm.com

*Attorneys for Plaintiff and Class*

*Pro Hac Vice Application Forthcoming